UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————

THOMAS VAN ORDEN,

                    Plaintiff,

              V.

MICHAEL V. ASTRUE,
Commissioner of Social Security,

                    Defendant.

—————————————————————

**REPORT AND
RECOMMENDATION**

09-CV-81
(GLS/VEB)

## I. INTRODUCTION

In May of 2006, Plaintiff Thomas Van Orden filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he has been unable to work since March 9, 2006.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, Irwin M. Portnoy & Associates, P.C., Irwin M. Portnoy, Esq., of counsel, commenced this action on January 26, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 24).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff filed an application for DIB on May 18, 2006, alleging disability beginning on March 9, 2006. (T at 10, 88).[1]  The application was denied initially and on reconsideration.  (T at 10, 42, 43, 61-62, 65-68).   Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 10, 60).  On May 15, 2008, Plaintiff appeared with counsel, in Poughkeepsie, New York and testified at a video conference hearing.  (T at 10, 234-54).  The hearing was conducted before ALJ Dennis G. Katz sitting in White Plains, New York. (T at 10, 234-54). On August 12, 2008, ALJ Katz issued a written decision denying the application for benefits.  (T at 10-18). The ALJ's decision became the Commissioner's final decision on December 18, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

Plaintiff, through counsel, timely commenced this action on January 26, 2009. (Docket No. 1).  Plaintiff filed a supporting Brief on April 30, 2009. (Docket No. 8).  The Commissioner filed a Brief in opposition on July 28, 2009.  (Docket No. 17).  Plaintiff filed a Reply Brief on September 4, 2009. (Docket No. 22).[2]  The Commissioner filed a Surreply Brief on September 30, 2009. (Docket No. 23).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6).

[2]The reply brief was erroneously filed as a Motion for Judgment on the Pleadings.

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and that this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements through September 30, 2009.  (T at 12). The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2006. (T at 12).  He concluded that the medical evidence established that Plaintiff had  "severe" impairments, including a back impairment, a left shoulder impingement, and degenerative disc disease, but that the evidence did not indicate that Plaintiff's impairments met or medically equaled one of the listed impairments

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 12).  The ALJ determined that Plaintiff has the residual functional capacity to perform a full range of sedentary work and some "light exertion level work tasks." (T at 13).  The ALJ found that Plaintiff is able to perform "fine manipulations and activities requiring reaching above shoulder length with the left upper extremity 75% of the time during a typical work day." (T at 13).  The ALJ determined that Plaintiff cannot perform work that requires more than occasional twisting of the body or more than occasional movement of the head and neck. (T at 13).  The ALJ concluded that Plaintiff was unable to perform his past relevant work as a woodworker.  (T at 17).  The ALJ noted that Plaintiff is a "younger individual" as set forth in 20 CFR § 404.1563.  The ALJ determined that considering Plaintiff's age, education (high school), work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (T at 18).  As such, the ALJ found that Plaintiff is not under a disability as defined by the Social Security Act.  (T at 18).  As noted above, the ALJ's decision became the Commissioner's final decision on December 18, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers seven (7) principal arguments in support of his position.  First, Plaintiff contends that the ALJ did not conduct a full and fair hearing.  Second, he argues that the ALJ erred in failing to consider the combined effect of the impairments.  Third, Plaintiff asserts that the ALJ erred in evaluating the medical evidence.  Fourth, Plaintiff argues that the ALJ did not

adequately explain his reasons for concluding that Plaintiff's impairments did not meet or equal one of the impairments set forth in the Listings.  Fifth, Plaintiff contends that the ALJ did not properly evaluate his credibility.   Sixth, Plaintiff asserts that the ALJ erred in determining his residual functional capacity.  Seventh, Plaintiff argues that the ALJ should have consulted a vocational expert.  This Court will address each argument in turn.

### a.    Due Process

At the hearing before the ALJ, Plaintiff testified that in 2005 he owned and operated his own woodworking business. (T at 240).  When the ALJ asked how much Plaintiff earned during that year, he said he would need to "check the back taxes." (T at 240).  When asked for an estimate, Plaintiff indicated that he earned approximately $8,000 per month. (T at 242).  The ALJ requested a copy of Plaintiff's 2005 income tax return. (T at 242).  On May 19, 2008, shortly after the hearing, Plaintiff's counsel sent a letter to the ALJ indicating that Plaintiff "does not believe he filed a 2005 tax return." (T at 23).  Plaintiff provided his 2006 federal tax return instead, which showed only $5,249 in income. (T at 27-29).

The ALJ found several discrepancies in Plaintiff's testimony.  First, Plaintiff testified that he earned gross income of approximately $96,000, but his Social Security earnings record showed no income for that year. (T at 17, 77).   Second, Plaintiff testified that he would need to check his "back taxes" to ascertain his income for 2005, but later indicated that he did not file a tax return for that year. (T at 17).  Third, the claim that he had not filed a tax return in 2005 appeared to be contradicted by Plaintiff's 2006 tax return, which indicated that he was carrying forward a net operating loss of $3,332 from a "prior year." (T at 17, 27).  Plaintiff's counsel notes that this loss was "apparently" for 2005. (Docket No. 8, at p. 2).

7

In light of the foregoing, the ALJ concluded that Plaintiff did not accurately report his monthly income during 2005 to the Internal Revenue Service. (T at 17). In addition, there was evidence to the effect that Plaintiff continued to work "off the books" and misrepresented the date on which he stopped working. For example, Plaintiff unequivocally testified at the hearing that he had not worked since March of 2006 (T at 237), but medical records indicated that he stopped working in May of that year. (T at 190). Plaintiff's counsel later admitted that Plaintiff continued working until May of 2006 and, in fact, earned most of his income for that year after his March 2006 automobile accident. (T at 23). In the face of this admission, Plaintiff was forced to amend his alleged onset date from March 9, 2006 (the date of the auto accident) to June 1, 2006. (T at 23). A report prepared by Dr. Adam S. Soyer in March of 2008 indicated that Plaintiff "has been working," further contradicting Plaintiff's testimony. (T at 192).

The ALJ concluded that Plaintiff's continued work "off the books" suggested "not only that he has not been fully candid, but that he is not as physically limited as he contends." (T at 17).

Plaintiff contends that the ALJ denied him due process by failing to use his administrative powers to resolve a significant factual issue. Plaintiff argues that the ALJ improperly surmised that Plaintiff had underreported income. Rather, Plaintiff contends that the ALJ should have provided a supplemental hearing on the issue of what income, if any, Plaintiff earned and whether Plaintiff had a legitimate explanation for the apparent discrepancies in his testimony and tax records.

This Court finds Plaintiff's argument unavailing. Plaintiff suggests that a supplemental hearing might have produced evidence and/or explanations that would

resolve the inconsistencies noted by the ALJ.  However, Plaintiff does not actually state what that evidence or explanation would actually be.  Other than general information about options for self-employment income, Plaintiff makes no attempt whatsoever to explain the inconsistencies noted by the ALJ, including (for example) why he earned approximately $96,000 in gross income in 2005, but his earnings record shows no income and he does not "believe" that he filed an income tax return for that year.  To that end, it should be noted that this is not information in the exclusive possession of a third party.  Plaintiff is (or should be) possessed of any and all information that might tend to ameliorate the apparent contradictions outlined by the ALJ.  Having failed to offer any meaningful details about what that information might be, Plaintiff cannot legitimately argue that the ALJ committed reversible error by failing to, *sua sponte*, attempt to untangle what appears to be deceitful testimony and elicit rehabilitative information at a supplemental hearing.  This Court finds no due process violation by the ALJ.

### b.   Failure to Consider Combined Effects of Impairments

If a claimant has multiple impairments, the combined effect of all impairments should be considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; 42 U.S.C. § 423(d)(2) (B).  SSR 96-8p provides, in pertinent part, that in determining the claimant's residual functional capacity, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an

individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Id.

Plaintiff contends that the ALJ failed to properly consider the combined effects of the injury to his cervical spine, his left shoulder, and his lumbar spine.  In support of this argument, Plaintiff points to evidence of stenosis in the cervical spine at different levels (T at 127-29, 161, 219, 223), herniations in the thoracic and lumbar spine (T at 152), and degenerative changes in his shoulder muscles.  (T at 222).

This Court finds no support for Plaintiff's suggestion that the ALJ failed to consider the combined effects of his impairments.  In fact, the ALJ discounted the State Agency review analyst's adverse findings because the analyst "did not take into consideration the claimant's left shoulder impairment and resultant functional limitations." (T at 16).  Other than the conclusory assertion that the ALJ did not consider the combined effect of his impairments, Plaintiff offers no explanation as to how such consideration would have even arguably changed the ALJ's decision.  Plaintiff's only suggestion is that when considered together, the combined evidence of his impairments tends to make his allegations of disabling pain more credible.  As discussed further below, the ALJ considered all of the medical evidence, evaluated Plaintiff's testimony, and made disability and credibility determinations supported by substantial evidence.

### c.    Evaluation of Medical Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence of record.  In particular, Plaintiff argues that the ALJ should have afforded controlling weight to the assessment of Dr. Denno, his treating physician.

10

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Dr. Denno, Plaintiff's treating general practitioner, opined that Plaintiff had no limitations as to walking, standing, or climbing stairs. (T at 225)  However, he indicated that Plaintiff was moderately limited as to his ability to sit, lift, and carry and very limited with respect to pushing, pulling, and bending. (T at 225)  The ALJ essentially credited Dr. Denno's findings, noting that they were "consistent with the objective

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

documentary evidence of record, which demonstrates that the claimant is not precluded from performing *all* kinds of work." (T at 16)(emphasis in original).  Other than suggesting that the ALJ should have asked Dr. Denno to clarify what he meant by "moderately limited," Plaintiff has not articulated a basis upon which one could even arguably conclude that Dr. Denno's findings, even if accepted completely, establish disability under the Act.

Lastly, although the ALJ incorrectly indicated that Dr. Denno found no limitation as to sitting, this error was harmless because substantial evidence supports the ALJ's ultimate conclusion that Plaintiff could perform the requirements of at least sedentary work. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits).  For example, Dr. Gary Gieseke, Plaintiff's treating neurologist, opined that while Plaintiff could not perform his prior woodworking job, he was "better suited for a light duty job that does not require any lifting bent at the waist [or] any twisting or any excessive movement of the head and neck." (T at 155).  An office note from Dr. Adam Soyer indicated that Plaintiff's pain was "constant," but "low grade," and that Plaintiff had been working as of March 2008. (T at 192).  Accordingly, this Court finds no reversible error with respect to the ALJ's treatment of Dr. Denno's findings.

### d.    Listed Impairment

Plaintiff argues that his medical impairments meet or medically equal the

12

impairments listed in §1.02 or §1.04 of the Listings.  As such, Plaintiff contends that the ALJ erred by finding that his impairments did not meet or medically equal one or both of those impairments; that the ALJ did not adequately explain the reasons supporting his conclusion; and that the ALJ should have consulted a medical expert.

As discussed above, if a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria for the impairment set forth in the Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530.  To satisfy this burden the claimant must offer

13

medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In this case, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 12). This Court finds that the ALJ's decision was in accord with substantial evidence.

### i.      Listing § 1.02

Plaintiff suggests that his impairments meets or equals the impairment set forth in §1.02 of the Listings (Major dysfunction of a joint(s) (due to any cause)). That impairment requires, as a threshold matter, (1) "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)," (2) "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," and (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.02. In addition, one of the two following criteria must be satisfied: (a) "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively" or (b) "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." Id.

Even assuming *arguendo* that Plaintiff satisfies the three-part threshold test, there is no support for his suggestion that he meets either of the other criteria. An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.00B(2)(b)(1). Further, this section provides that:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Id.

The evidence contradicts any suggestion that Plaintiff cannot ambulate effectively. Plaintiff's treating physician, Dr. Denno, opined that he had no limitations with respect to walking. (T at 225). Plaintiff testified that he plants vegetables as a hobby, does stretching exercises for three hours daily, and is able to drive a car. (T at 95, 243-45). Although Plaintiff indicated that he does not walk much due to his pain (T at 97), he goes outside every day, can travel alone, and mows his lawn with a riding lawn mower. (T at 95). He is able to shop in stores, but does so infrequently. (T at 96). Dr. Denno's assessment and Plaintiff's activities of daily living are clearly inconsistent with the supposition that he cannot ambulate effectively, as defined in the Listings.

The second possible criteria required by Listing § 1.02 requires an "inability to perform fine and gross movements effectively," which is defined as "an extreme loss of

function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.00B(2)(c).  Moreover, this section states:

> To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

Id.

Plaintiff indicated that he had no problems attending to personal care and was able to spend approximately an hour preparing healthy meals. (T at 93-94).  Although Dr. Denno opined that Plaintiff was very limited in regards to pushing, pulling, and bending (T at 225), there is no indication that the limitations rose to the level of an extreme loss of function of both upper extremities.  Indeed, the descriptions provided of Plaintiff's daily activities fatally undermines any such suggestion.  Accordingly, this Court finds no reversible error in the ALJ's failure to conclude that Plaintiff's impairments met or medically equaled §1.02 of the Listings.

### ii.    Listing § 1.04

Section 1.04 of the Listings (Disorders of the spine) requires "compromise of a nerve root (including the cauda equina) or the spinal cord" with one or more of the following: (a) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);" (b) "[s]pinal

16

arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;" or (c) "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively."  20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04.

Plaintiff, the party who bears the burden of proof as to this element, has not established that he meets any of these three criteria.  As noted above, the evidence contradicts any claim that he is unable to ambulate effectively and the medical records generally noted normal motor and sensory examinations, with good muscle strength and tone. (T at 108, 109, 138, 153-54, 191).  This Court finds no reversible error in the ALJ's failure to conclude that Plaintiff's impairments met or medically equaled §1.04 of the Listings.   Under the circumstances, this Court concludes that the ALJ was likewise not obligated to consult a medical expert.  An ALJ "may also ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527 (f)(2)(iii).  Plaintiff has offered no support for his argument that the ALJ was obligated to exercise his discretion under this subsection where, as here, a review of the medical evidence does not even create an arguable issue as to whether the Plaintiff satisfies all of the requisite criteria set forth in either of the suggested Listings.

### e.    Credibility Determination

Plaintiff contends that the ALJ improperly discounted his testimony concerning the

17

disabling effect of his pain.   In particular, Plaintiff suggests that his testimony was supported by the medical evidence and that he should have been given enhanced credibility because of his work record.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and

18

limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, as outlined above, the ALJ provided very specific reasons for discounting Plaintiff's credibility. This Court finds no error in the ALJ's assessment. The ALJ noted several inconsistencies in Plaintiff's testimony concerning the date when he stopped work and the filing of income tax returns. (T at 23, 190, 192, 237). In addition, Plaintiff described his pain as a 9 out of 10 while sitting at the hearing. (T at 252). This level of pain was plainly inconsistent with an ability to sit during the hearing and testify, as

19

Plaintiff did, and it is also substantially contradicted by his daily activities, which (as noted above) included cooking, sowing vegetable seeds, and mowing the lawn.  Medical records from 2008 indicated that Plaintiff described his pain as "intermittent" and "mild." (T at 188, 190).  In light of these discrepancies, even assuming Plaintiff's work record entitled him to a substantial measure of credibility, the ALJ quite reasonable concluded that Plaintiff's testimony was not fully credible.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

f.      **Residual Functional Capacity**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

Plaintiff offers a "boilerplate" argument in which he sets forth the legal standard governing a RFC analysis, followed by a single sentence: "The ALJ did not engage in such analysis.    Instead he minimized the medical evidence to the point where it was meaningless." (Docket No. 8, at p. 22).  This conclusory assertion does not remotely support a claim for remand.  The ALJ engaged in a detailed review of the evidence (T at 13-16) and provided and concluded that Plaintiff retained the RFC to perform a full range of sedentary work and some light exertion level work tasks. (T at 13).

SSR 96-9p provides, in pertinent part, as follows:

The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that

involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

The ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work is well-supported by the record evidence.  Dr. Gieske, Plaintiff's treating neurologist, stated that Plaintiff could not perform a job involving heavy lifting, but was "better suited" for a light-duty job. (T at 155).  Dr. Denno, his treating physician, found no limitations with regard to standing or walking.  (T at 225).  Plaintiff indicated that he could not lift more than 15 pounds at a time, implying an ability to lift less than that. (T at 95).  The record also contained at least one indication that Plaintiff continued working into March of 2008, nearly two years after the alleged onset of disability. (T at 192).  The ALJ also noted the generally normal motor/sensory examinations, along with indications that Plaintiff's condition improved with medication and therapy. (T at 14-16).  In light of the foregoing, this Court finds that the ALJ's RFC determination was supported by substantial evidence.

In his Reply Brief, Plaintiff asserts a new argument, raising a specific challenge to the ALJ's finding that he is able to perform activities requiring reaching above shoulder length with the left upper extremity 75% of the time during a typical work day. (T at 13). Plaintiff does not point to any particular even suggesting that his ability to reach is *more* limited than the ALJ's assessment.  Rather, he simply notes that the ALJ's finding of 75% is not supported by any  particular reference in the medical record.  First, this Court need not address the issue because "new arguments may not be made in a reply brief." Ernst

Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir.1999).  In any event, even if this Court were to consider the argument, it does not provide a basis for overturning the ALJ's decision.  As discussed above, Plaintiff has not pointed to any evidence establishing that his ability to reach overhead is more limited than the ALJ's assessment.  Moreover, the ALJ's finding, which was relatively favorable to the Plaintiff in that he determined that some limitation was present, appears to be based upon Plaintiff's complaints of pain in the left shoulder when reaching overhead, which he reported to Dr. Soyer. (T at 192).  As such, this Court finds no reversible error in this regard.

### g.    Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age,

education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In the present case, the ALJ noted that because Plaintiff retained the RFC to perform the full range of sedentary work, considering Plaintiff's age (42 years old on the alleged disability date, which is classified as a "younger individual"), education (high school), and work experience, a finding of "not disabled" was mandated by Medical-Vocational Rule 202.28. (T at 18).  The ALJ then considered the effect of Plaintiff's additional limitations (i.e. he cannot perform work that requires more than occasional twisting of the body or more than occasional movement of the head and neck) on the

24

occupational base of unskilled sedentary work.  The ALJ concluded that the additional limitations had "little or no effect" on Plaintiff's occupational base. (T at 18).  For the above-stated reasons, the Court finds that the ALJ's determination in this regard was supported by substantial evidence, the ALJ was not required to consult a vocational expert, and his reliance on the Grids was therefore appropriate and in accordance with applicable law.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

25

Dated:   February 16, 2010

        Syracuse, New York


## V. ORDERS


Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &
Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy
of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the
Clerk of this Court within ten(10) days after receipt of a copy of this Report &
Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)
of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION
WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE
OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE
DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**
Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.
1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.
§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY
Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 16, 2010

Victor E. Bianchini
United States Magistrate Judge

27